# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:15-cv-00039-MR

| | |
|---|---|
| SCOTT COLE, III, <br><br> Plaintiff, <br><br> vs. <br><br> WELLS FARGO BANK, N.A., <br> Defendant. | **AMENDED COMPLAINT** <br><br> (**Jury Trial Demanded**) |

Plaintiff Scott Cole, III, through counsel and pursuant to Rules 7, 8, and 15 of the Federal Rules of Civil Procedure, complains of Defendant Wells Fargo Bank, N.A., as follows:

## PARTIES, JURISDICTION, & VENUE

1. Plaintiff Scott Cole, III resides at 401 Madruga Avenue, St. Augustine, Florida 32086.

2. At all relevant times, Mr. Cole owned the property at issue, which is located in Macon County, North Carolina.

3. Defendant Wells Fargo Bank, N.A. ("Wells Fargo") is a South Dakota corporation.

4. At all relevant times, Wells Fargo conducted business in North Carolina and maintained a place of business in the State.

5. This Court has personal jurisdiction over the Defendant pursuant to N.C. Gen. Stat. § 1-75.4.

## FACTS

6. On or about October 31, 2006, Mr. Cole entered into a mortgage contract with Wells Fargo's predecessor in interest, AME Financial Corporation, consisting of a Promissory Note and Deed of Trust (the "Mortgage"), for the purpose of financing a real estate purchase located at 261 Satulah Ridge Road, Highlands, North Carolina (the "Highlands Property").

7. The Highlands Property was purchased as a second home.

8. At the time of this purchase, Mr. Cole maintained his primary residence in Florida, where he had already made a career as a real estate developer.

9. Like the Highlands Property, Mr. Cole had a monthly mortgage payment on the Florida residence.

10. Mr. Cole's financial situation deteriorated quickly and unexpectedly during the Great Recession of 2008, and he realized that soon he would be unable to afford paying for both home loans simultaneously.

11. In February 2009, Mr. Cole discussed this situation with employees of Wells Fargo who in turn offered to explain modification options, which they claimed he would benefit from.

12. However, Wells Fargo also told Mr. Cole that they could not offer him the assistance of a reduced loan payment unless he was three months late on his monthly payments.

13. Wells Fargo suggested to Mr. Cole that he skip making his payment on the Mortgage for the next three months.

14. Relying on Wells Fargo's offer to reduce his monthly payment, Mr. Cole did not send in the loan payment for three months, from March to May 2009.

15. The original payment amount was $1,964.28 per month.

16. On or about May 31, 2009, Wells Fargo sent Mr. Cole a letter, which stated that he was in default and that if Mr. Cole Did not pay $4,161.68 by July 15, 2009, his Mortgage would be accelerated.

17. In response to the letter, Mr. Cole contacted Wells Fargo about its offer to reduce his monthly payment. Wells Fargo requested Mr. Cole to provide documentation of his income, expenses, and assets.

18. Mr. Cole promptly provided Wells Fargo with the requested documentation.

19. Subsequently, Wells Fargo employees contacted Mr. Cole and informed him that he had been approved for a modification of the Mortgage under the federal Home Affordable Modification Program ("HAMP").

20. Wells Fargo explained to Mr. Cole that HAMP required him to make three consecutive payments during a "trial period."

21. These trial payments were $1,163.38 per month.

22. Wells Fargo employees told Mr. Cole that once he had successfully paid these three payments, the trial payment amount would then become his permanent monthly payment amount for the remainder of the loan's term.

23. Mr. Cole agreed to this modification arrangement.

24. Relying on the modification terms expressed to him by Wells Fargo's employees, Mr. Cole moved his immediate family, including his 90-year-old father and 55-year-old disabled sister, to his home at the Highlands Property.

25. Mr. Cole paid each of the three trial payments timely and in full.

26. Mr. Cole then proceeded to pay this same monthly amount for the next two years. Wells Fargo accepted all of the payments that Mr. Cole made.

27. Nevertheless, Wells Fargo later refused to honor its promise to permanently reduce Mr. Cole's monthly payment amount.

28. Mr. Cole's efforts to negotiate with Wells Fargo about the modification became ongoing.

29. In January 2011, while still in a dispute with Wells Fargo over its attempt to renege on the payment arrangement, Mr. Cole's home at the Highlands Property was partially destroyed by fire.

30. Mr. Cole used his own funds to repair the home.

31. Mr. Cole later received a check from his homeowners' insurance company for $149,345.71 as reimbursement for the repairs that he had made to the fire damaged home.

32. On or about August 30, 2011, Mr. Cole tendered a check to Wells Fargo in the amount of $149,345.71 (the "August Check").

33. Mr. Cole attached a letter with the August Check, which explained the condition of its acceptance. In particular, Mr. Cole's letter conspicuously stated that the check was tendered as full satisfaction of any debt obligation owed to Wells Fargo in connection with the Highlands Property. Further, the letter instructed Wells Fargo that if it did not agree to this accord, then the check should be returned to Mr. Cole immediately.

34. On or about November 4, 2011, Wells Fargo cashed the August Check from Mr. Cole.

35. Wells Fargo later denied that the August Check was accepted in full satisfaction of the debt.

36. Wells Fargo initially applied the entire amount of the August Check to the principal balance owed on the Loan. This deposit reduced the principal from $262,035.69 to $112,689.98.

5

37. On or about November 30, 2011, Wells Fargo sent Mr. Cole a letter, which stated that, due to his supposed default, Mr. Cole's Loan file had been referred to Wells Fargo's attorney with instructions to begin foreclosure proceedings.

38. On or about December 19, 2011, Trustee Services of Carolina ("Trustee Services") sent a letter to Mr. Cole informing him that Trustee Services intended to initiate a foreclosure proceeding on behalf of Wells Fargo. The letter further stated that Wells Fargo had advised Trustee Services that Mr. Cole's debt was $112,689.98.

39. Mr. Cole retained the undersigned attorney to represent him in the foreclosure proceeding before the Clerk of Superior Court of Macon County, North Carolina.

40. At the foreclosure hearing, Mr. Cole's attorney argued that the August Check constituted a full satisfaction of the Mortgage debt.

41. Mr. Cole's counsel also argued in the alternative that, at worst, the proceeds from the August Check were sufficient to cover numerous periodic payments, and therefore the foreclosure was disallowed since there was no default.

42. In response to this argument, Wells Fargo asserted at the foreclosure hearing that it had applied the entire $149,345.71 sum of the August Check to the principal balance of the Mortgage.

43. Further, Wells Fargo offered into evidence an accounting history for the Mortgage, which showed that Wells Fargo had not applied any of the August Check towards Mr. Cole's periodic loan payments.

44. Throughout the course of the foreclosure proceeding, and for the subsequent two years, Wells Fargo consistently maintained its position that the August Check had been applied solely to reduce Mr. Cole's principal balance. And Wells Fargo repeatedly argued that the outstanding principal balance was $112,689.98.

45. During this time, Mr. Cole contacted Wells Fargo in writing to request that it provide him with the payoff balance due under the Mortgage.

46. Wells Fargo failed to provide Mr. Cole with a payoff balance within ten business days as required by N.C. Gen. Stat. § 45-93.

47. Wells Fargo then persisted to refuse Mr. Cole's subsequent requests for a payoff amount.

48. Accordingly, Wells Fargo had sufficient notice regarding its violation of the statutory duty to report and of Mr. Cole's intent to institute litigation if Wells Fargo failed to comply.

49. Ultimately, the Macon County Superior Court did not agree with Mr. Cole's argument that the August Check constituted full satisfaction of the Mortgage.

50. As a result, Mr. Cole was faced with the imminent foreclosure of his home and he became fearful that he might lose all of the possessions in his home if a foreclosure sale proceeded.

51. This situation placed immense pressure on Mr. Cole and, on or about August 6, 2014, he was forced to sell his home at a quick sale price.

52. Due to the urgency of the sale, the Highlands Property sold for only $405,000.00, which was substantially less than its real market value at the time.

53. As arranged, Mr. Cole diverted a portion of his sale proceeds to satisfy the balance remaining on the Mortgage.

54. However, at this point Wells Fargo changed its position regarding the accounting of the Mortgage. Now taking a completely opposite stance, Wells Fargo argued that it had applied a substantial portion of the August Check to the periodic loan payments rather than applying the entire amount to the principal balance.

55. In support of its new position, Wells Fargo offered a supposedly corrected accounting history (the "2014 Accounting Statement"), which showed that approximately $30,000 of the August Check had been applied to periodic payments.

56. Based on this newly produced accounting statement, Wells Fargo inflated Mr. Cole's alleged principal balance by $30,247.94, from $112,689.98 to $142,937.42.

57. In total, Wells Fargo now demanded that Mr. Cole pay $173,380.36 or else Wells Fargo would refuse to release the Deed of Trust, thereby preventing Mr. Cole from closing on the quick sale transfer.

58. This situation placed Mr. Cole in an economic dilemma. He was forced to pay Wells Fargo the full $173,380.36 in protest.

59. Mr. Cole contacted Wells Fargo at least thirty days prior to instituting this lawsuit, whereby he notified Wells Fargo of the claims and violations asserted herein and demanded settlement of the same.

60. In particular, Mr. Cole demanded that Wells Fargo return the principal overpayment amount of $30,247.94.

61. Wells Fargo rejected this demand and kept all of the surplus funds.

### **FIRST CLAIM FOR RELIEF**
**(Unjust Enrichment)**

62. After the August Check was deposited in 2011, Wells Fargo consistently claimed that the outstanding Mortgage debt was $112,689.98, and the Defendant reaffirmed this amount on numerous occasions up until August 2014.

63. Wells Fargo expressly told Mr. Cole, in writing, that the $112,689.98 payoff figure was accurate.

64. Mr. Cole relied on this representation and proceeded to quick sale the Highlands Property to a third-party purchaser. He did so under the impression that, at most, he would owe Wells Fargo $112,689.98 from the sale proceeds.

65. Per Wells Fargo's own representations to Mr. Cole and to the Macon County Superior Court, it was only entitled to $112,689.98

66. Despite the understanding and agreement between the parties, Wells Fargo used its superior economic position to unfairly force Mr. Cole to pay an inflated amount of $173,380.36 before Wells Fargo would release the Deed of Trust.

67. As a proximate result, Mr. Cole was damaged in an amount equal to the difference between the actual, original principal amount ($112,689.98) and the amount claimed under the 2014 Accounting Statement ($173,380.36).

68. Correspondingly, Wells Fargo was unjustly enriched in the amount of $60,690.38.

## SECOND CLAIM FOR RELIEF
### (Negligence)

69. Wells Fargo had a duty to accurately account for Mr. Cole's loan payments and to use reasonable care in presenting him with account information and balances owed.

70. Wells Fargo breached its duty of care when it represented to Mr. Cole and the Superior Court that the payoff balance was only $112,689.98, and then later represented that the balance was actually $173,380.36.

71. Wells Fargo breached its duty of care when it failed to accurately apply the August Check to Mr. Cole's account balances according to the terms of the Mortgage.

72. Wells Fargo's breach caused Mr. Cole to suffer an overpayment.

73. Wells Fargo's breach caused the foreclosure to proceed when, in fact, Mr. Cole's periodic payments should have been credited as current.

74. Further, the breach caused Mr. Cole to sell his home at the quick sale in August 2014, which prevented him from receiving a fair market value for the Highlands Property.

75. Wells Fargo's negligence was not disclosed to Mr. Cole until Defendant produced the 2014 Accounting Statement.

76. As a proximate result of Wells Fargo's negligence, Mr. Cole was injured and is entitled to recover damages in an amount in excess of $10,000 from the Defendant.

### THIRD CLAIM FOR RELIEF
**(Breach of the Duty of Good Faith and Fair Dealing)**

77. Wells Fargo had both implied and express duties to act in good faith in the performance of the contractual duties between the parties, including an obligation of fair dealing in servicing the debt and abiding by the terms of the Mortgage.

78. Wells Fargo had a statutory duty to conduct itself with good faith and fair dealing pursuant to N.C. Gen. Stat. § 25-1-304, as codified under the Uniform Commercial Code.

79. Wells Fargo had a statutory duty pursuant to the Secure and Fair Enforcement Mortgage Licensing Act, N.C. Gen. Stat. § 53-244.010, *et seq.*, to act in good faith and fair dealing when servicing Mr. Cole's Mortgage.

80. Wells Fargo breached its duty of good faith and fair dealing by misapplying the August Check, falsely reporting the payoff amount, and, at other times, unlawfully refusing to disclose the payoff amount altogether.

81. Wells Fargo breached its duty of good faith and fair dealing by forcing Mr. Cole to pay the inflated amount of $173,380.36 after it had misrepresented the balance for almost three years, and after Mr. Cole had already entered an agreement to sell the Highlands Property to a third-party purchaser.

82. This breach arose in August 2014 when Wells Fargo produced the 2014 Accounting Statement.

83. As a proximate result of Wells Fargo's breach, Mr. Cole was damaged in an amount equal to the difference between the actual, original principal amount and the amount claimed under the 2014 Accounting Statement.

84. Mr. Cole is therefore entitled to recover compensatory damages in an amount to be proved at trial.

## FOURTH CLAIM FOR RELIEF
### (Fraud)

85. In the alternative to Plaintiff's claim for negligence, Mr. Cole hereby alleges fraud or fraud in the inducement against Wells Fargo.

86. Wells Fargo first claimed that it had applied the August Check to the principal balance under the Mortgage, so that Defendant could obtain a favorable ruling in the foreclosure proceeding.

87. When compared with Wells Fargo's later accounting "correction," it is clear that Wells Fargo misrepresented the nature and extent of the August Check allocation so as to deceive the Court and the Plaintiff.

88. Wells Fargo used the foreclosure proceeding to enact economic and legal pressure on Mr. Cole, which was intended to place him in a position of inferiority.

89. Wells Fargo then waited until Mr. Cole had negotiated a quick sale with a third-party purchaser before it ever disclosed the fabricated 2014 Accounting Statement.

90. Upon information and belief, Wells Fargo employees generated the 2014 Accounting Statement with the intent to deceive Mr. Cole about the true payoff amount.

91. Then, with the risk of a foreclosure sale looming, Wells Fargo used the Deed of Trust as a form of leverage to force Mr. Cole into a position where he had no other choice but pay the inflated amount.

92. Mr. Cole was in fact deceived by Wells Fargo's misrepresentations concerning the payoff amount owed.

13
Case 1:15-cv-00039-MR   Document 7   Filed 04/17/15   Page 13 of 17

93. The falsity of these representations was not discovered by Mr. Cole until after Wells Fargo introduced the 2014 Accounting Statement.

94. As a proximate result of Wells Fargo's fraudulent misrepresentations, the Defendant was able to foreclose on the Highlands Property.

95. Further, Wells Fargo's ongoing fraud caused Mr. Cole to agree to the quick sale, believing that he would only owe $112,689.98, when in fact the Defendant intended to collect $173,380.36 before it would release the Deed of Trust.

96. As a proximate result of Wells Fargo's misrepresentations and deceptive scheme, Mr. Cole has been injured in an amount equal to the resulting overpayment.

## FIFTH CLAIM FOR RELIEF
### (Violations of N.C. Debt Collection Act)

97. Mr. Cole is a consumer.

98. The obligation between Mr. Cole and Wells Fargo was a debt governed by Chapter 75, Article 2, of the General Statutes, N.C. Gen. Stat. §§ 75-50 to 75-56 ("N.C. Debt Collection Act" or simply the "Act").

99. Wells Fargo operates as a lender and mortgage servicing company, and is therefore in the business of soliciting, collecting, and processing mortgage payments as referred to in the Act.

100. Employees of Wells Fargo made false representations to Mr. Cole regarding the nature of the debt and the amount owed under the Mortgage.

101. These misrepresentations continued through 2014, and included the 2014 Accounting Statement.

102. As a proximate result of Wells Fargo's violations of the N.C. Debt Collection Act, Mr. Cole is entitled to recover actual damages incurred as a result of such failure, as well as any other civil penalties and cumulative remedies provided by law.

### SIXTH CLAIM FOR RELIEF
(Violations of N.C. Gen. Stat. § 45-93)

103. Wells Fargo violated its duty to make reasonable attempts to comply with Mr. Cole's requests for the balance due on the Mortgage.

104. Wells Fargo failed to respond at all to Mr. Cole's requests for this information in 2013 and then, in 2014, Wells Fargo provided false information concerning the payoff amount and principal due.

105. As a result of Wells Fargo's breach of its duty to provide such documentation, Mr. Cole has been damaged and is entitled to recover actual damages, including attorneys' fees, and any other remedies at law or equity.

WHEREFORE, Mr. Cole respectfully prays to the Court for the following relief:

1. That Plaintiff have and recover of Defendant Wells Fargo compensatory damages in the amount of $60,690.38;

2. That the costs of the action be taxed against Defendant;

3. That Plaintiff have and recover such other and additional damages as he may be entitled under North Carolina law;

4. That this matter be tried by a jury; and

5. That the Court grant such other and further relief as the Court deems just and proper.

This the 17th day of April, 2015.

/s/ David R. Payne
David R. Payne, N.C. Bar No. 19945
Attorney for Plaintiff
DAVID R. PAYNE, P.A.
1 N. Pack Square, Suite 300
Asheville, North Carolina 28801
Telephone: (828) 258-0076
Fax: (828) 281-2873
E-mail: dpayne@drplawfirm.com

# CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on this date the foregoing AMENDED COMPLAINT was electronically served via the Court's CM/ECF system to all parties as follows:

B. Chad Ewing
WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
301 S. College Street, Suite 3500
Charlotte, North Carolina 28202
cewing@wcsr.com
Attorney for Defendant

This the 17th day of April, 2015.

/s/ David R. Payne
David R. Payne
N.C. Bar No. 19945