| | |
|---|---|
| **SCOTT COLE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **MEMORANDUM OF** |
| **vs.** ) | **DECISION AND ORDER** |
| ) | |
| **WELLS FARGO BANK, N.A.,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion to Remand [Doc 13] and the Defendant's Motion to Dismiss [Doc. 11].

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Viewing the allegations of the Amended Complaint as true, the following is a summary of the relevant facts.  On or about October 31, 2006, the Plaintiff Scott Cole obtained a mortgage from AME Financial, and the mortgage was subsequently acquired by the Defendant Wells Fargo Bank, N.A. ("Wells Fargo").  [Doc. 7 at ¶ 6].  The mortgage consisted of a Note in the principal amount of $275,000, and a Deed of Trust that encumbered the Plaintiff's second home (the "property").  [Id.].  In 2009, the Plaintiff began experiencing financial difficulties.  [Id. at ¶ 10].  Upon seeking assistance from Wells Fargo, the Plaintiff was advised that he needed to be three

months behind in his mortgage payments to be eligible for a loan modification. [Id. at ¶¶ 11-13]. Thus, after skipping three payments, the Plaintiff applied for relief under the federal Home Affordable Modification Program ("HAMP"). [Id. at ¶¶ 18, 19]. In January of 2011, while the Plaintiff was still negotiating his HAMP loan modification, the property was partially destroyed by fire. [Id. at ¶ 29]. The Plaintiff paid for the repairs out of pocket and was later reimbursed by his insurance company in the amount of $149,345.71. [Id. at ¶ 31]. On or about August 30, 2011, the Plaintiff tendered a check to Wells Fargo in the amount of $149,345.71 (the "lump sum payment"), along with a letter stating the check was tendered in full satisfaction of any debt owed to Wells Fargo. [Id. at ¶¶ 32, 33]. The letter further stated that if Wells Fargo did not agree to the accord, then the lump sum payment should be returned to the Plaintiff. [Id. at ¶ 33].

On or about November 4, 2011, Wells Fargo cashed the lump sum payment, and applied the entire amount to the principal balance owed on the loan, reducing the principal from $262,035.69 to $112,689.98. [Id. at ¶ 34, 36]. On November 30, 2011, the Plaintiff received a letter from Wells Fargo stating that his mortgage was in default and would be referred for foreclosure proceedings. [Id. at ¶ 37]. On or about December 19, 2011, the Plaintiff received a letter from Trustee Services of Carolina advising him that it

intended to initiate foreclosure on behalf of Wells Fargo, and further stating that the principal amount then owed was $112,689.98.  [Id. at ¶ 38].

The Plaintiff opposed the foreclosure in the Superior Court of Macon County, arguing that the lump sum payment was in full satisfaction of the debt, or in the alternative, that the lump sum payment caught up any past due periodic payments eliminating his default.  [Id.at ¶¶ 40, 41].  Wells Fargo responded that it had applied the entire lump sum payment towards the principal, reducing the principal balance to $112,689.98, and it submitted evidence of an account history showing that it had not applied any of the lump sum payment towards the Plaintiff's past due payments.  [Id. at ¶¶ 42, 43].  The parties litigated the matter in the Superior Court of Macon County for two years, during which time Wells Fargo failed to comply with multiple requests by the Plaintiff for a payoff balance.[1]  [Id. at ¶ 44].  Ultimately, the Superior Court of Macon County rejected the Plaintiff's argument that the lump sum payment constituted full satisfaction of the mortgage.[2]  [Id. at ¶ 49].

---

[1] The Plaintiff alleges that he requested a payoff balance in writing and that Wells Fargo "failed to provide [the Plaintiff] with a payoff balance within ten business days."  [Doc. 7 at ¶ 46].  It is unclear whether Wells Fargo was merely untimely in complying with the Plaintiff's request, or whether it never provided the Plaintiff a payoff amount.  The Plaintiff separately alleges "Wells Fargo then persisted to refuse [the Plaintiff's] subsequent requests for a payoff amount."  [Id. at ¶ 47].

[2] The Amended Complaint does not address how the Superior Court ruled with respect to the Plaintiff's argument that the lump sum payment should have been applied to past due periodic payments.

On or about August 6, 2014, the Plaintiff sold the property for less than its market value to avoid imminent foreclosure proceedings. [Id. at ¶ 52]. When the Plaintiff attempted to pay off the loan, however, Wells Fargo informed the Plaintiff for the first time that it had identified an error in its 2011 application of the Plaintiff's lump sum payment. [Id. at ¶¶ 54-56]. Wells Fargo issued the Plaintiff a corrected accounting history, showing that approximately $30,000 of the lump sum payment, which it had previously applied to the principal, was now applied to the Plaintiff's past due periodic payments. [Id. at ¶ 55]. As a result, the Plaintiff's principal balance rose from $112,689.98 to $142,937.42. [Id. at ¶ 56]. In total, Wells Fargo required $173,380.36 before it would release the Deed of Trust, which the Plaintiff paid in protest.[3] [Id. at ¶¶ 57, 58].

On January 26, 2015, the Plaintiff filed a Complaint against Wells Fargo in the Superior Court of Buncombe County, North Carolina asserting claims for negligence, fraud, fraud in the inducement, unfair and deceptive trade practices ("Chapter 75"), breach of the implied duty of good faith and fair dealing, and violations of the duty to disclose borrower's principal balance pursuant to the North Carolina Mortgage Debt Collection and

---

[3] The Amended Complaint does not allege why Wells Fargo required a payoff amount that was $30,000 in excess of the principal balance, but it appears that this additional amount was likely the result of late charges, interest, and other fees.

Servicing Act ("Chapter 45").  [Doc. 1-1].  The Plaintiff's Complaint sought $60,690.38 in actual damages, the difference between the original principal amount and the amended loan payoff amount, as well as treble damages under Chapter 75.  [Id.].  Wells Fargo removed the Plaintiff's action to this Court, by Notice filed February 25, 2015, based upon diversity of the citizenship of the parties and an amount in controversy exceeding $75,000.[4] [Doc. 1].

On April 3, 2015, Wells Fargo filed a Motion to Dismiss.[5]  [Doc. 5].  The Plaintiff did not respond to Wells Fargo's Motion to Dismiss.  Instead, on April 17, 2015, pursuant to Rule 15 of the Federal Rules of Civil Procedure, the Plaintiff filed an Amended Complaint wherein the Plaintiff reordered the claims and eliminated his claims under Chapter 75 and for fraud in the inducement, as well as his prayer for treble damages.  [Doc. 7].  The Amended Complaint alleges claims for unjust enrichment, negligence, breach of the duty of good faith and fair dealing, fraud, violations of the North Carolina Debt Collection Act ("NCDCA"), and violations of Chapter 45.  The

---

[4] Wells Fargo alleged in its Notice of Removal that the parties were diverse because the Plaintiff was a citizen of the State of Florida and Wells Fargo was a citizen of the State of South Dakota.  [Doc. 1 at 2].  The diversity of the parties is not in dispute.

[5] On February 27, 2015, this Court granted Wells Fargo's February 26, 2015 Motion for Extension of Time to Answer Complaint [Doc. 3], extending Wells Fargo's deadline to Answer or otherwise respond until April 3, 2015.  [Doc. 4].

Plaintiff still seeks $60,690.38 in actual damages,[6] plus civil penalties pursuant to the NCDCA, and attorney's fees pursuant to Chapter 45. [Id.].

On May 4, 2015, the Plaintiff filed a Motion to Remand to State Court [Doc. 13], and Wells Fargo filed a Motion to Dismiss for Failure to State a Claim [Doc. 11]. Both parties filed their Responses on May 21, 2015, [Docs. 14, 15], and Replies were filed by both parties on June 1, 2015. [Docs. 16, 17]. Having been fully briefed, this matter is now ripe for disposition.

## II. STANDARDS OF REVIEW

### A. Motion to Remand

"Federal courts are courts of limited jurisdiction, and [must] presume that a cause lies outside this limited jurisdiction." Wheeling Hosp., Inc. v. Health Plan of the Upper Ohio Valley, Inc., 683 F.3d 577, 583–84 (4th Cir. 2012). "Because removal jurisdiction raises significant federalism concerns, [courts] must strictly construe removal jurisdiction. If federal jurisdiction is doubtful, a remand is necessary." Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994).

---

[6] The Amended Complaint also claims damages in excess of $10,000 for his negligence claim, and other amounts and remedies to be proven at trial or as allowed by law or equity. It is unclear whether the damages for these claims are subsumed by the $60,690.38 that the Plaintiff pleads as actual damages.

**B.   Rule 12(b)(6) Motion to Dismiss**

In order to survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  To be "plausible on its face," a plaintiff must demonstrate more than "a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 678.

Determining whether a complaint states a plausible claim for relief is "a context-specific task," Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009), which requires the Court to assess whether the factual allegations of the complaint are sufficient "to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555.   As the Fourth Circuit has recently explained:

> To satisfy this standard, a plaintiff need not forecast evidence sufficient to prove the elements of the claim.  However, the complaint must allege sufficient facts to establish those elements.  Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is probable, the complaint must advance the plaintiff's claim across the line from conceivable to plausible.

Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012) (citations and internal quotation marks omitted).

In reviewing the complaint, the Court must accept the truthfulness of all factual allegations but is not required to assume the truth of "bare legal conclusions." Aziz v. Alcolac, Inc., 658 F.3d 388, 391 (4th Cir. 2011). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." Walters, 684 F.3d at 439. Notably, a Rule 12(b)(6) motion "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Edwards v. City of Goldsboro, 178 F.3d 231, 243-44 (4th Cir. 1999) (quoting Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992)).

## III.    DISCUSSION

### A.    Motion to Remand

A defendant may remove a civil action from state court where the action is one "of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Federal courts have original jurisdiction where it is established that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states." 28 U.S.C. § 1332(a).

The existence of diversity jurisdiction is determined at the time the action is filed. See St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S.

283, 288-93 (1938). As such, courts generally do not consider post-removal pleadings in determining the existence of diversity jurisdiction. See Porsche Cars N. Am., Inc. v. Porsche.net, 302 F.3d 248, 255-56 (4th Cir. 2002). The Fourth Circuit has held, however, that "if some event subsequent to the complaint reduces the amount in controversy, such as the dismissal of one count based on the defendant's answer, the court must then decide in its discretion whether to retain jurisdiction over the remainder of the case." Shanaghan v. Cahill, 58 F.3d 106, 112 (4th Cir. 1995).

Here, there is no dispute that this Court properly had original diversity jurisdiction over the case at the time of removal. [7] The Plaintiff argues, however, that when he dropped his Chapter 75 claim in the amended Complaint this reduced the amount in controversy below the jurisdictional threshold, thereby permitting this Court to exercise its discretion and remand the case pursuant to Shanaghan. [Doc. 17]. Wells Fargo opposes the Plaintiff's Motion, arguing in part that this Court need not apply Shanaghan because the amount in controversy is still met. Wells Fargo, as the removing party, bears the burden of showing the amount in controversy by a

---

[7] The Plaintiff concedes that "[t]here is no dispute that this case was properly removed to this Court under 28 U.S.C. § 1332, since the parties are citizens of different states and Plaintiff's original Complaint alleged actual damages of $60,690.38, an amount which was to be trebled if Plaintiff succeeded on his claim for violations of [Chapter 75]." [Doc. 13-1 at 1].

preponderance of the evidence.  See Bartnikowski v. NVR, Inc., 307 F. App'x 730, 734 (4th Cir. 2009).

"The sum claimed by the plaintiff controls the amount in controversy determination."  JTX Tax, Inc. v. Frashier, 624 F.3d 635, 639 (4th Cir. 2010) (citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288 (1938)).  When a claim is based upon a statute for which "there is a maximum penalty . . . it is appropriate to measure the amount in controversy by the maximum penalty and not by how much the plaintiff is likely to be awarded."  Bologna v. Enhanced Recovery Co., LLC, No. 5:15-CV-18, 2015 WL 1780881, at *3 (N.D.W. Va. Apr. 20, 2015).  Further, courts may also consider a reasonable estimate for attorneys' fees when such fees are provided for by statute.  See Francis v. Allstate Ins. Co., 709 F.3d 362, 368 (4th Cir. 2013) cert. denied, 134 S. Ct. 986 (2014) (affirming a district court's use of "experience and common sense" to estimate the potential attorneys' fee award).

Aggregating Plaintiff's claims for compensatory damages, civil penalties, and attorneys' fees, the Court is satisfied that Wells Fargo has met its burden of showing the amount in controversy still exceeds $75,000.  Therefore, Shanaghan is inapplicable.   Here, the Plaintiff's Amended Complaint seeks compensatory damages in the amount of $60,690.38.  the

Plaintiff also claims that the Wells Fargo violated the N.C. Debt Collection Act, a statute that imposes a maximum penalty of $4,000. <u>See</u> N.C. Gen. Stat. Ann. § 75-56. Finally, the Plaintiff also seeks to recover attorneys' fees pursuant to N.C. Gen. Stat. § 45-94. Combining the civil penalty with the compensatory damages, the amount in controversy is $64,690.38, just $10,309.62 below the jurisdictional threshold. Further, applying experience and common sense, this Court estimates that if the Plaintiff prevails in this matter, that his attorneys' fees will very likely exceed the $10,309.62 left to reach the jurisdictional threshold.[8] <u>See</u> <u>Francis v. Allstate Ins. Co.</u>, 709 F.3d at 368. Because the parties are diverse and the amount in controversy still exceeds $75,000, this Court has subject matter jurisdiction over the case. For these reasons, the Plaintiff's Motion to Remand is hereby denied.

## B. Motion to Dismiss

The Plaintiff alleges that Wells Fargo exploited the 2011 misapplication of his lump sum payment in state court to win the right to foreclose and to place him in an inferior bargaining position. The Plaintiff further alleges that only after he contracted to sell the property for less than fair market value, at a calculated loss in reliance upon Wells Fargo's representation of the payoff,

---

[8] The Court also notes that the Plaintiff did not respond to Wells Fargo's offer to consent to remand in exchange for the Plaintiff stipulating to an award not to exceed $75,000.

did Wells Fargo "correct" its prior misapplication of the lump sum payment resulting in a higher payoff amount. Wells Fargo then employed this improved bargaining position to refuse to release the Deed of Trust until the Plaintiff paid the higher amount. On these allegations, the Plaintiff claims unjust enrichment, negligence, breach of the duty of good faith and fair dealing, fraud, violations of the NCDCA, and violations of Section 45.[9]

Wells Fargo moves to dismiss all of Plaintiff's claims. The Court will address these arguments in turn.

### 1. Unjust Enrichment

Wells Fargo first moves to dismiss Plaintiff's claim for unjust enrichment, arguing that the Deed of Trust is an express contract that precludes this claim.

---

[9] Although the Plaintiff alleges the existence of a contract (the Note and Deed of Trust), and that Wells Fargo, the other party to the contract, acted unfairly in relation to its performance under that contract, the Plaintiff has not alleged that any express term of their agreement was violated. The Plaintiff appears to attempt to argue an express breach of contract claim in his Response to Wells Fargo's Motion to Dismiss. There, the Plaintiff belatedly alleges for the first time that the terms of the Note and Deed of Trust were altered by modification or waiver, that a new agreement existed regarding how lump sum payments were to be applied, and that Wells Fargo violated those express terms. There are, however, no allegations of any such modification in the Amended Complaint, nor any allegations setting forth the purported revised terms. This Court cannot consider new claims raised in a Response Brief; seeking to add claims this way is inappropriate because it is comparable to amending the Complaint a second time without first obtaining leave of court. See Proctor v. Metro. Money Store Corp., 579 F. Supp. 2d 724, 744 (D. Md. 2008).

To state a claim for unjust enrichment, a plaintiff must allege facts demonstrating: (1) a measurable benefit conferred on defendant; (2) that the defendant consciously accepted; and (3) the benefit was not conferred on the defendant officiously or gratuitously. Lake Toxaway Cmty. Ass'n, Inc. v. RYF Enterprises, LLC, 226 N.C. App. 483, 490, 742 S.E.2d 555, 561 (2013). The existence of an express contract between the parties, however, precludes a finding of unjust enrichment with regard to matters addressed in that contract. Flexible Foam Products, Inc. v. Vitafoam Inc., 980 F. Supp. 2d 690, 699 (W.D.N.C. 2013) aff'd sub nom. FFP Holdings LLC v. Vitafoam Inc., 576 F. App'x 234 (4th Cir. 2014); Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp., 351 F. Supp. 2d 436, 446 (M.D.N.C. 2005); Southeastern Shelter Corp. v. BTU, Inc., 154 N.C. App. 321, 331, 575 S.E.2d 200, 206 (2002).

Here, the Plaintiff alleges that Wells Fargo was unjustly enriched in the amount of $60,690.38 by requiring Plaintiff to pay $173,380.36, instead of the $112,6893.98 it previously quoted him, before it would release the Deed of Trust.  [Doc. 7 at ¶¶ 62-68].  The Plaintiff does not dispute that the Deed of Trust entitled Wells Fargo to demand payment before releasing the Deed of Trust.  The Plaintiff's claim is simply that Wells Fargo demanded more than it was entitled to, and thus "squeeze[d] an extra $60,690.38 out of him."

[Doc. 15 at 6]. The Note and Deed of Trust, however, are fatal to the Plaintiff's claim because the express contract comprised of these documents specifically addresses how payments are to be applied. The Note provides, in pertinent part, as follows:

> [Plaintiff] ha[s] the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When [Plaintiff] make[s] a Prepayment, [Plaintiff] will tell the Note Holder in writing that [Plaintiff] [is] doing so. [Plaintiff] may not designate a payment as a Prepayment if [Plaintiff] ha[s] not made all the monthly payments due under the Note.

The Deed of Trust provides, in pertinent part, as follows:

> Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) Interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

["Note" Doc. 11-1 at 1; "Deed of Trust" Doc. 11-2 at 5].[10] Because the Plaintiff's unjust enrichment claim relies upon a matter specifically dealt with

---

[10] The Court may consider the Note and Deed of Trust without converting Wells Fargo's Rule 12(b)(6) motion into a motion for summary judgment, because the pleadings rely upon these documents and their authenticity is not disputed. See Stewart v. Pension Trust of Bethlehem Steel Corp., 12 Fed. Appx. 174, 176 (4th Cir. 2001).

in his contract with Wells Fargo, the Plaintiff's unjust enrichment claim must fail as a matter of law.  See Lawhead v. PNC Bank, No. 1:13-cv-00198-MR-DLH, 2014 WL 1266995, at *8 (W.D.N.C. Mar. 26, 2014).  Therefore, Wells Fargo's Motion to Dismiss the Plaintiff's unjust enrichment claim is granted.

## 2. Negligence

The Plaintiff asserts that Wells Fargo was negligent in misinforming the Plaintiff as to the correct balance owed in 2011 and in failing to account properly for the lump sum payment in 2014.  [Doc. 7 at ¶¶ 70-71].    Wells Fargo moves to dismiss the Plaintiff's negligence claim arguing that (i) the claim is time-barred, and (ii) the allegations fail to state a claim for negligence.

"To state a claim for common law negligence, a plaintiff must allege: (1) a legal duty; (2) a breach thereof; and (3) injury proximately caused by the breach."  Stein v. Asheville City Bd. of Educ., 360 N.C. 321, 328, 626 S.E.2d 263, 267 (2006).  A claim for negligence in North Carolina must be brought within three years of the date on which the claim accrues.  N.C. Gen. Stat. § 1-52; Birtha v. Stonemor, N. Carolina, LLC., 220 N.C. App. 286 at 292, 727 S.E.2d 1, 7 (2012).  A negligence claim accrues when the wrong giving rise to the claim is complete, despite the fact that the plaintiff may not discover the actual injury until later.  Id.

Wells Fargo first argues that, to the extent the Plaintiff bases his negligence claim upon any alleged misconduct by Wells Fargo occurring in 2011, it is barred by the statute of limitations. The Plaintiff's Response does not challenge this conclusion, and states that the 2011 facts were alleged as "background information included to provide a degree of relevant context." [Doc. 15 at 7]. The Plaintiff, however, argues that his negligence claim arises from Wells Fargo's handling of his lump sum payment in 2014, when Wells Fargo modified its prior misapplication of the lump sum payment after had relied upon the misapplication to his detriment. Specifically, the Plaintiff claims that Wells Fargo's 2014 modification proximately caused: (i) the Plaintiff's overpayment for the release of the Deed of Trust; (ii) Wells Fargo's pursuit of foreclosure; and (iii) the Plaintiff's acceptance of less than fair market value for the sale of the property at a distressed sale. To the extent that this states a negligence claim, it has been filed within the statutory limitations period. Accordingly, Wells Fargo's argument that this negligence claim is time-barred is without merit.

The Plaintiff alleges that Wells Fargo breached its duty to account for the Plaintiff's loan payments according to the mortgage when it belatedly applied a portion of the lump sum payment to periodic installments in lieu of applying the entire payment to principal. In other words, the Plaintiff alleges

that Wells Fargo breached its duty to perform according to the terms of their contract.

"North Carolina has recognized an 'independent tort' arising out of breach of contract only in 'carefully circumscribed' circumstances." Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 346 (4th Cir. 1998) (quoting Strum v. Exxon Co., U.S.A., a Div. of Exxon Corp., 15 F.3d 327, 331 (4th Cir. 1994)).  The "failure to perform a contractual obligation is never a tort unless such nonperformance is also the omission of a legal duty." Toone v. Adams, 262 N.C. 403, 407, 137 S.E.2d 132, 135 (1964); see also N.C. State Ports Auth. v. Lloyd A. Fry Roofing Co., 294 N.C. 73, 81, 240 S.E.2d 345, 350 (1978) ("Ordinarily, a breach of contract does not give rise to a tort action by the promisee against the promisor.").  Generally, absent a special relationship, the only duties imposed upon a lender are those duties set forth in the loan agreement to which it is a party.  See Camp v. Leonard, 133 N.C. App. 554, 560, 515 S.E.2d 909, 913, (1999).  Otherwise, "the law does not typically impose upon lenders a duty to put borrowers' interests ahead of their own."  Dallaire v. Bank of Am., N.A., 367 N.C. 363, 368, 760 S.E.2d 263, 267 (2014).

Here, the Plaintiff's allegations establish nothing more than a typical debtor-creditor relationship.  There are no allegations of any special

circumstances under which Wells Fargo owed a duty beyond that which was imposed upon it by the contract. The Plaintiff's alleged injury arises from Wells Fargo's application of his lump sum payment to past due periodic installments in accordance with the terms of the Note and Deed of Trust. This does not state a claim in negligence.[11]  For these reasons, the Court grants Wells Fargo's Motion to Dismiss Plaintiff's negligence claims.

### 3.    Breach of the Duty of Good Faith and Fair Dealing

Wells Fargo next moves to dismiss the claims for breach of the duty of good faith and fair dealing, arguing that (i) the Plaintiff's claims are barred, at least in part, by the statute of limitations; (ii) the claims fail to the extent they contradict the express terms of the contract; and (iii) the Amended Complaint pleads insufficient facts to satisfy Twombly/Iqbal.

"In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." Sunset Beach Dev., LLC v. AMEC, Inc., 196 N.C.App. 202, 217, 675 S.E.2d 46, 57 (2009) (quoting Bicycle Transit Auth., Inc. v. Bell, 314 N.C. 219, 333 S.E.2d 299, 305 (1985)).  This implied duty modifies the meaning of the contract's express terms to prevent

---

[11] The Plaintiff's Response to Wells Fargo's Motion to Dismiss highlights the incongruity of bringing a tort claim based upon these facts by perplexingly buttressing his negligence claims with traditional contractual defenses, such as modification, waiver, and estoppel.

a *de facto* breach when performance is maintained *de jure*.  See Girgis v. Countrywide Home Loans, Inc., 733 F. Supp. 2d 835, 854 (N.D. Ohio 2010) (citing Burger King Corp. v. Weaver, 169 F.3d 1310, 1315 (11th Cir. 1999)). "It is perhaps a principle of last resort to adjust economic harm wrongly or unconscionably inflicted," when losses are not otherwise compensable under ordinary contract principles.  United Roasters, Inc. v. Colgate-Palmolive Co., 649 F.2d 985, 990 (4th Cir. 1981).

"Courts have equated the covenant of good faith and fair dealing with an obligation to exercise . . . discretion reasonably and with proper motive, . . . not . . . arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties."  Mendenhall v. Hanesbrands, Inc., 856 F. Supp. 2d 717, 726 (M.D.N.C. 2012) (citing Fishoff v. Coty Inc., 634 F.3d 647, 653 (2d Cir. 2011)).  This duty is not without limits, however, and no obligation may be implied that would be inconsistent with the other terms of the contractual relationship.  Id.

"Where the claim for breach of good faith is 'part and parcel' of a similar claim for breach of an express term of the contract claim, that claim will rise and fall with the other breach of contract claim . . . and only a single recovery of damages will be allowed."  Rezapour v. Earthlog Equity Grp., Inc., No. 5:12CV105-RLV, 2013 WL 3326026, at *4 (W.D.N.C. July 1, 2013) (citations

omitted) (quoting <u>Lord of Shalford v. Shelley's Jewelry, Inc.</u>, 127 F. Supp. 2d 778, 787 (W.D.N.C. 2000) (citations omitted)). Where there has been no allegation of a breach of an express term, a plaintiff may proceed on an independent claim for breach of the duty of good faith and fair dealing. <u>See Robinson v. Deutsche Bank Nat. Trust Co.</u>, No. 5:12-CV-590-F, 2013 WL 1452933, at *12 (E.D.N.C. Apr. 9, 2013). The statute of limitations for claims for breach of the duty of good faith and fair dealing is three years. <u>Mountain Land Properties, Inc. v. Lovell</u>, 46 F. Supp. 3d 609, 625-26 (W.D.N.C. 2014).

Here, the Plaintiff alleges that Wells Fargo breached the duty of good faith and fair dealing by: (i) misapplying the lump sum payment, (ii) falsely reporting the payoff, (iii) refusing to disclose the payoff at times, and (iv) forcing the Plaintiff to pay an "inflated amount" for the release of the Deed of Trust. [Doc. 7 at ¶¶ 77-84].

According to the Plaintiff's allegations in the Amended Complaint, Wells Fargo originally misapplied the lump sum payment and first reported the payoff amount upon which the Plaintiff allegedly relied no later than December of 2011. Any claim based on those activities accrued at that time. <u>See</u> <u>Lovell</u>, 46 F. Supp. 3d at 625-26. This action was not filed until January 26, 2015. Therefore, the Plaintiff's claims based upon Wells Fargo's

application of the payment and its representations in 2011 are barred by the three-year statute of limitations.  See id. at 626.

The Plaintiff also bases this claim on Wells Fargo's action in 2014 of (i) misapplying the lump sum payment and (ii) consequently reporting an incorrect payoff.  The Note and Deed of Trust, however, contain express terms agreed upon by the parties regarding how payments were to be applied, and the law will not imply an obligation that contradicts the parties' agreed upon terms.  See Mendenhall, 856 F. Supp. 2d at 726.  Therefore, to the extent the Plaintiff argues that the duty of good faith obligated Wells Fargo to apply the payment in a way different from that dictated by the contract (and thus producing a different payoff amount), the Plaintiff has failed to state a claim upon which relief may be granted.[12]

The Plaintiff next asserts that Wells Fargo breached its implied obligation to provide him with a correct payoff upon request.  In support, the Plaintiff alleges that he made multiple requests for a payoff amount, that Wells Fargo failed to fulfill his requests, and that only after the Plaintiff sold

---

[12] As noted *supra*, the Plaintiff's Brief in response to Wells Fargo's Motion to Dismiss first alleges that the terms of the Note and Deed of Trust were altered by modification or waiver, and that a new agreement existed.  Although such new allegations may aid the Court in navigating the logical gaps of the Amended Complaint, they cannot serve to amend the Complaint.  Plaintiff has not obtained leave of Court to amend, and a pleading cannot be amended by arguments.  See Proctor, 579 F. Supp. 2d at 744.

the property for less than fair market value to avoid foreclosure did Wells Fargo finally contend that the Plaintiff owed a much higher payoff amount.

Wells Fargo argues that this claim should be dismissed because the contract did not obligate it to provide the Plaintiff with a payoff when requested. Wells Fargo's argument, however, must fail.

The Plaintiff asserts that the tardiness of Wells Fargo's disclosure of a much higher payoff was unreasonable and it injured his ability to receive the benefits of their contract – namely to evaluate the advantages of selling a property for a calculated loss to avoid greater financial distress. The fact that the contract does not expressly deal with the issue begs the question of whether this may have constituted bad faith or be contrary to the principle of fair dealing. Taking the factual allegations of the Amended Complaint as true and viewing all reasonable inferences in the Plaintiff's favor, the Plaintiff has stated a claim for breach of the duty of good faith and fair dealing. See Susilo v. Wells Fargo Bank, N.A., 796 F. Supp. 2d 1177, 1189 (D. Utah 2011) (denying Rule 12(b)(6) dismissal of breach of the duty of good faith claim where plaintiff alleged that the mortgage company refused to disclose the reinstatement amount).

The Plaintiff also alleges that Wells Fargo dealt with him in an unfair manner by shifting its position as to the proper allocation of the lump sum

payment.  Wells Fargo took one position in the state foreclosure proceeding as to the proper allocation, and based thereon (at least in part) Wells Fargo was granted the right to foreclose.  After obtaining the order of foreclosure, however, when the Plaintiff sold the house and saved Wells Fargo the trouble and expense of proceeding with the foreclosure sale, Wells Fargo took a different position as to the proper allocation of those funds.  Taking these allegations as true,[13] such allegations also state a claim for the breach of the covenant of good faith and fair dealing.  A lender cannot take one position as to the meaning of the contract in order to foreclose, but then take a different position when it seeks payment.  See Girgis v. Countrywide Home Loans, Inc., 733 F. Supp. 2d 835 (N.D. Ohio 2010) (borrowers stated claim for breach of implied covenant because borrower alleged, among other things, that the mortgage company refused to timely credit their payments).  Therefore, as to these allegations, Wells Fargo's Motion to Dismiss is denied.

### 4.    Fraud

Wells Fargo next moves to dismiss the Plaintiff's fraud claims, arguing that the Amended Complaint (i) lacks the specificity required by Rule 9, (ii)

---

[13] The Plaintiff's allegations as to Wells Fargo's conduct in the state foreclosure action are, at best, vague.

fails to allege any fraudulent act, and (iii) fails to allege any injury as a result of reasonably relying on any such fraudulent act.

In order to state a valid claim for fraud under North Carolina law, a plaintiff must allege (1) a false representation or concealment of a material fact; (2) that is reasonably calculated to deceive; (3) was made with the intent to deceive; (4) did in fact deceive the plaintiff; and (5) resulted in injury to the plaintiff. Anderson v. Sara Lee Corp., 508 F.3d 181, 189 (4th Cir. 2007). The party must also demonstrate that any reliance on the false representations was reasonable. See id.

Though the Plaintiff's allegations of fraud are difficult to discern, giving the Plaintiff the benefit of doubt, he alleges that Wells Fargo (i) misrepresented how it had applied the lump sum payment [Doc. 7 at ¶ 86], which induced the Plaintiff to "negotiate[ ] a quick sale" [id. at ¶ 89] and (ii) issued a "fabricated 2014 Accounting Statement" [id.] to induce the Plaintiff to pay more than he owed [id. at ¶¶ 90, 92]. The Plaintiff's allegations, however, fail to set forth a claim for fraud. Both parties agreed to the terms of the Note and Deed of Trust, and the law charges each with knowledge of their contents. See Cara's Notions, Inc. v. Hallmark Cards, Inc., 140 F.3d 566, 571 (4th Cir. 1998). It is undisputed that the first payoff quoted by Wells Fargo was false (or at least incorrect) in that it reflected a claimed principal

balance that was inconsistent with the terms of the Note and Deed of Trust. The Plaintiff could have easily discovered this, however, by reviewing his own agreement. Whether or not the first payoff was a false statement, the Plaintiff's reliance on the statement was unreasonable as a matter of law. Therefore, the Plaintiff's fraud claim based upon the first payoff fails as a matter of law.

The Plaintiff's second fraud claim also fails because the Plaintiff has failed to allege that the payoff Wells Fargo quoted in 2014 was false.[14] In fact, the Plaintiff has not alleged that Wells Fargo's 2014 payoff calculation was inconsistent with (or a breach of) the contract. The only contract identified in the Amended Complaint consists of the terms of the Note and Deed of Trust, and the Plaintiff has not alleged that Wells Fargo's application of the lump sum payment was inconsistent with those terms. Although the Plaintiff asserts the bare legal conclusion that the 2014 payoff amount was "fabricated," the Plaintiff has failed to allege that the higher payoff was actually false.

---

[14] The Plaintiff's allegations evoke an interesting issue as to whether Wells Fargo could be judicially estopped from asserting a payoff different from that relied upon by Wells Fargo in the state court proceeding. See generally Powell v. City of Newton, 364 N.C. 562, 569, 703 S.E.2d 723, 728 (2010). Whether judicial estoppel is applicable to this case, however, is not before this Court, as it was neither pleaded by the Plaintiff in his Amended Complaint nor briefed by the parties.

Even if Wells Fargo's revised calculation were incorrect, this would be a breach of the contract, not a fraud. See Int'l Designer Transitions, Inc. v. Faus Grp., Inc., 663 F. Supp. 2d 432, 445 (M.D.N.C. 2009).[15]

For all of the foregoing reasons, the Court grants Wells Fargo's Motion to Dismiss all of Plaintiff's claims for fraud.

### 5.    Violations of N.C. Debt Collection Act

The Plaintiff's fifth claim for relief alleges that Wells Fargo violated the NCDCA by "ma[king] false representations to [the Plaintiff] regarding the nature of the debt and the amount owed under the Mortgage." [Doc. 7 at 14]. Under the NCDCA, a plaintiff must first allege that (i) the alleged obligation is a "debt"; (ii) the claimant owing the obligation is a "consumer"; and (iii) the party attempting to collect the obligation is a "debt collector." Campbell v. Wells Fargo Bank, N.A., 73 F. Supp. 3d 644, 649 (E.D.N.C. 2014); Davis Lake Cmty. Ass'n v. Feldmann, 138 N.C. App. 292, 295, 530 S.E.2d 865, 868 (2000); Reid v. Ayers, 138 N.C. App. 261, 263, 531 S.E.2d

---

[15] The Plaintiff's fraud claims are also subject to dismissal because his allegations fail to satisfy the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure. See Cozzarelli v. Inspire Pharmaceuticals Inc., 549 F.3d 618, 629 (4th Cir. 2008). Rule 9(b) provides that when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). These circumstances include "the time, place, and contents of the false representations, as well as the identity of the person making the representations and what he obtained thereby." See Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999). The Plaintiff's extremely vague fraud allegations simply do not meet this standard.

231, 233 (2000); see N.C. Gen. Stat. § 75–50 (defining "consumer," "debt," and "debt collector"). The Plaintiff has satisfied all three elements here.[16]

"After satisfying these threshold requirements, a plaintiff also must allege the general elements of an unfair and deceptive trade practices claim under North Carolina law: an unfair act, in or affecting commerce, proximately causing injury." Campbell v. Wells Fargo Bank, N.A., 73 F. Supp. 3d 644, 649 (E.D.N.C. 2014); see Ross v. FDIC, 625 F.3d 808, 817 (4th Cir. 2010). In this case, the Plaintiff asserts that the unfair act was Wells Fargo's modification of its application of the lump sum payment after both parties relied on the initial application to the Plaintiff's detriment. Wells Fargo's business activities affect commerce. See N.C. Gen. Stat. § 75-1.1(b) ("commerce includes all business activities, however denominated"). The Plaintiff's allegations of injury are more problematic. The Plaintiff merely asserts that "actual damages [were] incurred as a result." [Doc. 7 at ¶ 102]. Elsewhere in the Amended Complaint, however, the Plaintiff alleges that he sold the house for "substantially less than the real market value at the time." [Id. at ¶ 52]. Giving the Plaintiff the benefit of the inference, this can be seen

---

[16] The Plaintiff expressly alleges that he is a consumer, and that his obligation to Wells Fargo is a debt, but the Plaintiff does not expressly allege that Wells Fargo is a debt collector. The Court is satisfied that the third element is pleaded, however, by the Plaintiff alleging that Wells Fargo "is in the business of . . . collecting . . . mortgage payments," which the Plaintiff previously identified as a debt. [Doc. 7 at 14].

as an allegation that Wells Fargo's provision of the lower payoff figure caused the Plaintiff to accept a substantially below-market sales price to his detriment. The Plaintiff has stated a claim for relief under the NCDCA, and therefore, Wells Fargo's Motion is denied with respect to this claim.

### 6. Violations of Chapter 45

Lastly, Wells Fargo moves to dismiss Plaintiff's Chapter 45 claim. Chapter 45 requires servicers of home loans to "make reasonable attempts to comply with a borrower's request for information about the home loan account and to respond to any dispute initiated by the borrower about the loan account . . . ." N.C. Gen. Stat. § 45-93.

Wells Fargo contends that the Plaintiff, who bought the property as a second home rather than his principal residence,[17] lacks standing to bring a claim under Chapter 45 because his loan does not qualify as a "home loan." Chapter 45 defines a "home loan" as:

> [a] loan secured by real property located in this State used, or intended to be used, by an individual borrower or individual borrowers in this State as a dwelling, regardless of whether the loan is used to purchase the property or refinance the prior purchase of the property or whether the proceeds of the loan are used for personal, family, or business purposes.

---

[17] Plaintiff specifically alleges that "[t]he Highlands Property was purchased as a second home," and that "[a]t the time of this purchase, [Plaintiff] maintained his primary residence in Florida . . .." [Doc. 7 at ¶¶ 7-8].

N.C. Gen. Stat. Ann. § 45-90. Citing Merriam-Webster's definition of "dwelling" as "a place where a person lives," Wells Fargo argues that Chapter 45's protections do not extend to loans obtained to purchase second homes. [Doc. 12 at 19]. The Plaintiff summarily responds to this argument by asserting that "[t]he Highlands Property constitutes a "dwelling" under N.C. Gen. Stat. § 45-93." [Doc. 15 at 12].

The term "dwelling" is not specifically defined within the statute. It is axiomatic that unless otherwise defined, words in a statute should be interpreted as taking their ordinary, contemporary, common meaning. <u>Perrin v. United States</u>, 444 U.S. 37, 42 (1979); <u>see, e.g.</u>, <u>State v. Louali</u>, 215 N.C. App. 176, 181, 716 S.E.2d 385, 389 (2011) (referencing Black's Law Dictionary to ascertain the ordinary meaning of statutory language). Black's Law Dictionary does not define the term "dwelling" alone, but similar to Merriam-Webster, Black's defines "dwelling-house" as a "house or other structure in which one or more people live; a residence or abode." *Dwelling-House*, <u>Black's Law Dictionary</u> (10th ed. 2014). Wells Fargo points to nothing limiting "residence" to *principal* residence or dwelling of domicile. The General Assembly could have limited the application of this statute to primary residences, but it chose not to do so. The Court will not import such limitation into the statute where its language does not so indicate. Therefore,

the Court concludes as a matter of law that Chapter 45 applies whenever a loan is secured by a residential property that is used for residential purposes by the borrower, whether that property is a first or second home. The Plaintiff alleges that the property in question was a home, albeit a second home. These allegations are sufficient to bring this claim within the purview of the Act.

Next, Wells Fargo argues that even if Chapter 45 applied to the Plaintiff's loan, the Plaintiff can only bring suit to recover for an alleged violation of the Act if he provided written notice to Wells Fargo of any claimed errors or disputes regarding the loan that forms the basis of the suit at least thirty days prior to filing suit. See N.C. Gen. Stat. § 45-94. In the Amended Complaint, however, the Plaintiff alleges that he provided the requisite notice "at least thirty days prior to instituting this lawsuit…." [Doc. 7 at ¶ 59]. Accordingly, Wells Fargo's argument on this point must be rejected.

Third, Wells Fargo contends that the Plaintiff's claim under Chapter 45 fails because the Plaintiff has not alleged that he suffered any actual damages as a result of Wells Fargo's alleged failure to comply with the provisions of the Act. Chapter 45 provides, in pertinent part, that a borrower may seek actual damages *"[i]n addition to* any equitable remedies and any other remedies at law …." N.C. Gen. Stat. § 45-94 (emphasis added). As

such, alleging actual damages is not a necessary element in order to state a claim upon which *some* form of relief may be granted. In any event, however, the Plaintiff has alleged that he requested payoff information and that because Wells Fargo did not timely provide accurate information because the Plaintiff sold the residence, the Plaintiff sold for a reduced price (i.e., accepted a contract amount lower than he otherwise would have). Thus, the Plaintiff has alleged *some* actual damage resulting from Wells Fargo's failure to comply with Chapter 45. For these reasons, Wells Fargo's Motion to Dismiss the Plaintiff's Chapter 45 claim is denied.

## O R D E R

IT IS, THEREFORE, ORDERED that the Plaintiff's Motion to Remand [Doc. 13] is **DENIED**.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss [Doc. 11] is **GRANTED IN PART** and **DENIED IN PART**. Specifically, the Defendant's Motion [Doc. 11] is **DENIED** with respect to Plaintiff's claims for breach of the duty of good faith and fair dealing, for violation of the NCDCA, and for violation of Chapter 45. In all other respects, the Defendant's Motion to Dismiss is **GRANTED**, and all of the Plaintiff's claims, with the exception of the aforementioned claims, are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

Signed: February 23, 2016

Martin Reidinger
United States District Judge